We'll proceed with the day calendar. And our first case is Debold Foundation v. the Commissioner of Internal Revenue. Good morning. May it please the Court. Give us one second. I'll let you let us get situated a little bit. All set? Go right ahead. Good morning. May it please the Court. Dwayne Weber, Counsel for Debold Foundation. Can you just move that microphone up a little bit so I can hear you a little bit better? There you go. Perfect. Yeah. Debold Foundation is here to ask the Court to vacate a decision by the tax court that it has a liability for tax that literally would wipe out the charitable efforts of the foundation and its local community. Debold Foundation asks the Court to direct either the dismissal of this case for lack of jurisdiction or direct that the tax court enter a decision that there is no liability for a period ended July 2, 1999. Excuse me. If you're correct, what happens next? In other words, if the tax court had no jurisdiction over the petition that you filed with the What happens next? You just walk away with the money? The period of limitations will have expired. Well, first of all, there is no taxable year ended July 2, 1999, so nothing further happens with respect to that year. If there was another period for which the – if the proper taxable year, the period of limitations, was still open, then, in theory, the commissioner could proceed with respect to that taxable period. However, that period closed on December 31, 2005. The claim that the tax year ended on July 2 was – that was your claim in the return that you filed? Yes, based on the facts as reflected in the actual transaction that was undertaken, which is a sale of stock. But as soon as the court decided that, as a matter of fact, that transaction would not be respected and, instead, it would be recharacterized as a sale of assets by the corporation, Double D Ranch, followed by a series of liquidating distributions, at that point, the whole regulation that requires consolidation of the corporations says, no, you don't have a consolidation, and, therefore, the return filed by the consolidated group for June 30, 1999 is true. But what should have happened then? I'm sorry? What should have happened then? I mean, you're saying, I take it that what should have happened in this case, according to you, is that after you filed a tax return for that tax year and the IRS calculated a deficiency and you filed a petition for review of that determination, what should the tax court have held? Well, we think the tax court should have respected the sale of stock, in which case the July 2, 1999 year is entirely appropriate under the consolidation. Yeah, but we said you were wrong about that, so we're done with that. Now, what should have happened in light of our subsequent decision, in light of the tax court's decision, which we effectively – well, we reversed the tax court. It's our decision. On the state law question, that's right. So then what should the tax court have done on remand, on this court? First, the tax court had to determine the federal questions because, as this court made very clear, the federal questions are not dictated by the state law questions. They're different bodies of law. So the tax court first had to make a determination as to whether the trends of the sale of stock transaction would be respected for federal tax law purposes. Once it determined that it would not respect it and instead would treat it as a sale of assets followed by a series of liquidating distributions, then the tax court either should have dismissed the case for lack of jurisdiction. At that point, had the statute of limitations already run for the IRS to recalculate the tax liability based on what you now say is, in light of our decision and the tax court's decision, the correct tax year? So, Your Honor, that's actually why we're here because the Commissioner of Internal Revenue, when he determined that he wanted to disregard the sale of stock and treat it as a sale of assets followed by a liquidation, that determination, based on the stipulation of the parties, was made on March 10 of 2006. At that point, the period of limitations for the year ended June 30, 1999, which is the proper taxable year under his theory, the Commissioner's theory, the period of limitations had already expired. Now, that doesn't mean the Commissioner hadn't performed an audit. The Commissioner had requested and obtained an extension of the period of limitations for more than two years beyond the natural expiration of that period of limitations. So what happened is the Commissioner realized, I'm out of time. I'm too late to pursue my theory in the proper taxable year, like I did in all of the other MIDCO intermediary cases where the Commissioner didn't do what the Commissioner is doing here, and that is alleged that the recharacterization truncated the taxable year. In none of the other cases has the Commissioner taken that position, but he had to here because the period of limitations had already expired for the proper taxable year. And so the ruse was in that proper taxable year when the sale of assets was reported. The ruse is yours. From the beginning, what this court determined effectively is that your folks engaged in what was essentially a fraudulent transaction. With all due respect, Your Honor, there was no allegation of fraud, and there's no proof of fraud. But the – The notice of liability is the issue. You're saying that the notice is basically as to the wrong tax year. Isn't that the crux of your argument? Based on the facts, the Commissioner's theory, and the – yes. There's a notice that says there's a problem in your taxable year ending July 2, 1999, and then you get before the tax court and there's no problem with that year, but it's discovered that there's a problem with 2002. I understand that that's a notice and jurisdiction problem. But here, the tax year you identified as pertinent to the transaction in dispute was what you identified as tax year ending July 2, 1999. Now, in the notice, you were told they were questioning your determination as to that tax year, and you were further told that it was because of a liability as transferee of assets. So the wholesale of stock thing is raised right at the start. I don't understand how that's a jurisdictional problem. The court is now hearing both sides on the propriety of that taxable year filing by you. In the end, it concludes it's wrong and that part of the error, because of the characterization of the transaction, is that you should have filed for the full 12-month period, not a one-day period. I don't understand how any of this raises a concern about whether you all received adequate notice as to what was in dispute. Help me out. So, Your Honor, the question here isn't one about notice. The question is whether the company went out of existence on July 2, 1999. The jurisdictional question is whether they gave you notice of the tax year in dispute. Isn't that right? No, it isn't a question of notice. It's a question of – What is the jurisdiction argument? The court is not competent to determine a liability for a taxable period that is not the full taxable period of the taxpayer and that was not included in the notice of deficiency and the notice of liability. So, when we have a situation such as this, where you identified a short tax year, and before the tax court that's found to be wrong? Your Honor, there are cases, which we discussed them in our brief, where the taxpayer reported for one tax year, the commissioner found a deficiency for that year, and as it turns out, that was the wrong tax year, so based on the facts determined by the court. Based on the court versus full 12-month tax year? Which case says that? It's the Pittsburgh Realty. Pittsburgh Realty versus West Virginia, the 1935 case? And Columbia River. Columbia River is the opinion that I was referring to, Your Honor. That's a tax court decision. That's correct. I mean, the other – so, what binding effect do they have on this court in construing? Well, so, in that case, the taxpayer – not unlike this case, the taxpayer reported for one period that was later determined not to include the full taxable period of the taxpayer. The court determined there were still activities and assets that the taxpayer had after the period for which it had filed its return, and, therefore, the proper taxable period was the full taxable period of that corporation, and, therefore, the notice did not identify the proper tax period, did not determine liability based on the full taxable period, and the court in that – now, there is some confusion, and this is reflected in the briefing of the parties, as to whether the court ruled that it had no jurisdiction or it ruled that it couldn't determine a liability for the improper taxable period. But the bottom line is the same. Whether the court says we don't have jurisdiction over the proper taxable year, which is true. The bottom line, with all respect, is not the same, is it? If the court had no jurisdiction, case over. If the court had jurisdiction but determined that it could not determine the correct, et cetera, then in that case it came out the same way. But in this case, we would then proceed to the question of whether, in fact, the corporation's – the foundation's activities were substantially wound up or not, which is a factual determination, and the tax court held that they had. So why – if there is jurisdiction, the next question for us, it seems to me, is whether that was a clearly erroneous factual determination on the part of the tax court that although there may have been some minor matters to be dealt with, the corporation's activities, the foundation's activities had substantially been wound up so that, in fact, it was correct to deal with the tax year. Your Honor, the court decisions on this are very clear. It's not a question of whether they're substantially wound up. It's whether they're completely wound up, and that's because even a $10,000 investment gives rise to interest, which gives rise to tax, which needs to be included in the tax liability determination for the corporation. Here, the tax court, in its order on this – If everything had been done properly and timely, what effect would all of that have actually had on the tax liability? It would be pretty trivial, would it not? If what had actually been done was to recalculate the tax for a full tax year, your folks would still be approximately $30 million, whatever it is, in the hole, right? Your Honor, it is absolutely not that simple. The Double D Ranch had about $120,000 of interest and dividend income for the period beyond July 2, 1999, that was properly reflected in its tax return for the period ended July – I'm sorry, June 30, 2000. Also, the real estate that was transacted on August 27th – How would that have benefited your folks in the tax calculation? Your Honor, with all due respect, it's not a question of whether it benefits them or not. It's a question of what's the proper – I understand that tax lawyers are very good bridge players and chess players, and, you know, there are rules of the game and so on. But what we're looking at, it seems to me, is a set of transactions that ought to have led to a very substantial tax liability. And you're claiming that essentially that all goes away because the IRS accepted in the first instance the tax year that the taxpayer proposed. Your Honor, with all due respect, that's not what the commissioner did. The tax period that the taxpayer reported the sale of assets, all of them, it stipulated, reported all of the gain on all of the assets is for the period ended June 30, 1999. I'm sorry, June 30, 2000. But the commissioner failed to issue a notice of liability or notice of deficiency on a timely basis for that period, like he did in all of the other cases involving mid-cos. So instead, he says, oops, what am I going to do? I'll try to go after this year, July 2, 1999. And the first thing, he was also out of time on that, the period of limitations had already expired. Let's go back to the beginning of what you said. You're not claiming that you were misled in any way about the notice of deficiency, right? You knew what they were talking about. The amounts set forth, the actual statement that's attached talks about the transferee of a transferee transaction. I mean, the facts were all presented to you in the notice of liability, right? You knew what they were talking about. It's not a question of notice, Your Honor. It's a question of the commissioner and the court are not competent to determine the liability. It's not a question of notice. We knew what they were talking about. It's just it's a technical error that they made and there's no jurisdiction. Your Honor, it isn't a technical error. The whole point is the proper taxable year was ended June 30, 2000. And if the commissioner at some point wanted to shift over and say, oh, wait a second, I made a mistake. I should have said the proper taxable year was ended June 30, 2000. Then, in theory, he might have been able to raise that. But the courts have said you can't do that in an answer to a petition and the courts have also, in this case, said you can't do that because that very determination would have been beyond the period of limitations if it had been made on March 10 when they issued the notice of deficiency for the July 2 year. I'm sorry. You brought this to the tax court, filing a petition over which you now say the tax court had no jurisdiction. Isn't that sort of what happened here? Your Honor, we were very clear. We filed a petition which you say the tax court had no jurisdiction over. Your Honor, we were very clear with the tax court from the very beginning, from a telephone call. Was there ever a motion for dismissal for lack of jurisdiction of your own petition? There couldn't be, Your Honor, until there was a finding of fact that for federal tax law purposes, the sale of stock would be disregarded because if the sale of stock was regarded, then the period did in fact end on July 2, 1999, pursuant to the consolidated return regulations that required Double D Ranch to be in a consolidated group. But as soon as the factual determination was made, and the tax court and the commissioner agree on this, as soon as that determination was made to recharacterize the transaction, the consolidated return rules no longer truncate the normal taxable year of the corporation. So at that point, the question becomes, does anything else in the tax law truncate that period? And the only provision that can is Section 1.6012-2A, which provides for truncating the taxable year on basically the death of the corporation. But that requires, as a matter of objective fact, no assets, not most of the assets are sold. They don't have any assets. They don't have any activities. And they have dissolved under state law. None of those three are found in this case. I know you've got a few minutes for rebuttal. Why don't we hear from Mr. Carpenter now? Thank you, Your Honor. Good morning, Your Honor, and may it please the Court. Diebold has not shown or made any attempt even to show that recalculating the deficiency for this full year length would make any difference in its tax liability, much less decrease the tax liability by $60 million, which is what would happen. Do they have to if there's a jurisdictional defect? Do they have to make that point? Well, they do, actually. Under the Estate of Yeager case, this Court followed what other courts have done as well in applying the standard whether the taxpayer was misled. It's sort of a harmless error standard, and I will grant that that's a bit— The problem is that's not what's been said in some of the tax court cases. The suggestion is, in Schick v. Commissioner, for instance, that there's no authority to find a deficiency for a period beyond notice, and the proper procedure would be for the respondent to issue a new notice of deficiency for the proper taxable year. In Columbia River, which your adversary cited, says there's no jurisdiction for any period beyond the last date included in the deficiency notice. The last date is the date in July of 1999. I understand that you don't think these cases deal with this situation, but we're going to have to address them. How do you suggest we do that in your favor? Well, in two ways. First of all, those cases, I think the ones that you cited in particular, they clearly do not treat this as an issue of jurisdiction. They do say that the Court— It doesn't. It's a little confusing the way that they've worded it. But what the Court is saying there, and they're referring, I think implicitly, I don't think they cite it, but they're referring to Section 6214B of the Code, and that says the tax court, in redetermining a deficiency of income tax for a taxable year, shall have no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid. They say that—there they say they never acquired jurisdiction over the latter period. I mean, that's the quoted language at pages 2. Right. I'm sorry. Yeah, and that's what 6214B does. So it's—the Court didn't have jurisdiction over the later period, but the later period was not the period that was in the notice or the period that was petitioned. So the Court did have jurisdiction in that case, and, in fact, it ruled and made a decision on the merits. My question on your adversary's argument is if you want a taxable year that goes past the July 2nd date, you had to give a notice that that was the year you were—you wanted a deficiency on. Right. You didn't do that. I think that's the thrust of their argument. Yes, and I think that's an accurate characterization. So the issue there would then be whether these other cases that aren't addressed in the older cases— for example, this Court's case, the State of Yeager, where the Court— and the Court has essentially recognized sort of a harmless error standard and said, if the notice said the wrong year, but nobody was misled about what was at issue, then the Court can still exercise jurisdiction anyway. So why didn't you pick July 2nd, then? Well, and that's— It's a little odd, right? The tax year is one day. Yes. I mean, the shortest answer is I don't know, and I've asked the trial attorneys. You know, this goes back over 10 years. And so no one's certain why that date was chosen. We think it was most likely chosen because that was the date that they put on their return. If you look at all these other MIDCO cases, what's consistent throughout those is that the commissioner assessed a deficiency for whatever year they reported in their return. They wanted to complete all the transactions within a day. I think it took a few days longer. So it was like July 5th when all the different transactions closed. That's my recollection of the first case. Isn't that— First case, you mean the first appeal in this case? Yeah. Yeah. Yes, sort of. They initially wanted to close on July 1st. Then there was a problem with that. Things were changed to July 2nd. And then the transfer of most—what was some 97% or roughly of the assets, which were stocks, sold to Merrill Lynch. And they had a trade date of July 2nd and then a settlement date of I think it was July 6th. And so they had argued that it didn't happen until July 6th.  And as we showed in our brief, in fact, for tax purposes, those securities were sold on the trade date. It's the trade date that counts, and it was July 2nd. So with respect to— But then there's the farm. Yeah. And the farm is perhaps the one that stands out the most because the actual sale, we certainly could see the formal transfer of title did not occur until I think August or something. However, even if it was July 1st, there was an agreement that was entered into that effectively transferred all of the benefits and burdens of ownership. And it was an operating agreement, it was called. It transferred all the benefits of burdens of ownership on July 1st, and then just the formal handover, the exchange of cash. So what I want to get to is Judge Radji's question earlier. I think she asked you something like—I may be—I'm sorry if I'm paraphrasing inaccurately, but I thought she asked if you wanted a different tax year than July 2nd, you should have petitioned for that. I didn't hear—I expected you to answer, we don't want a different tax year. We assessed July 2nd. The tax court said that was a correct tax period and then upheld the deficiency. Is that—am I wrong about that? No, you are correct, and thank you. I think I tried to go to the question and not preface it. But, yes, the preface to that answer would have been that, no, we determined the deficiency for the period that we think was correct. And that's the period that the tax court upheld the deficiency for. That's correct. So I'm having a little trouble understanding how there can possibly be a jurisdictional issue. The commissioner issues a deficiency notice for the very tax year that the taxpayer declared was the tax year. The tax court eventually, after many, many, many years of up and down, back and forth litigation, decides that the commissioner was correct. So I would have thought that the question before us is really a merits question, and what—now, that doesn't mean it's not a significant question, because I take it that what Mr. Weber is suggesting is that the calculation is actually incorrect because the tax year should have been something different. That the tax court is in error in upholding a deficiency for the short tax year because a correct tax calculation would have thrown out that declaration by the taxpayer that the tax year ended on July 2nd. Now, first of all, do you agree with me that that's the question that we should be looking at, or no? Yeah, well, I agree with you that the issue is not jurisdictional and that the issue they've raised goes to the merits. However, their opening brief raised it only as an issue of jurisdiction. They had argued it below in both regards. They had argued it as a merits issue, and when they lost on that, they tried again with sort of this last-ditch motion to dismiss. Excuse me, just some following you. You agree that the issue is a merits issue, but you don't — your first argument is you don't think that's properly before the court because it wasn't raised in their opening brief. Correct. Then your second argument would be, and if we do consider it, it is — the tax court is still correct. The tax court is still correct because the substance prevails over form. Okay, well, I understand your waiver argument, but I'd like to hear an elaboration of why the fact that the corporation's affairs were not really wound up on July 2nd, but were ultimately wound up maybe no later than August the 6th or something like that, or August the whatever, when the farm changes hands. What's wrong with that argument? Well, our position is that the tax court correctly determined. In fact, their argument is predicated on the tax court's determination that, in substance, the corporation liquidated on July 2nd. And even in form, 97 percent of the assets were sold, and 96 percent of the proceeds of that sale were remitted to the shareholders on July 2nd. Right, but I think it was really about the other 4 percent. The other 4 percent. Well, and what you have here is — you have this in every case, and variations on this are argued in every one of these MIDCO cases, where a taxpayer enters into a transaction where the form is designed to disguise what is actually happening in substance, and so the IRS is forced to recharacterize the transaction, there is always going to be some mismatch. So did anything happen after July 2nd through the next 11 months that would have made a material difference in the deficiency? That's the question, I think, right? The farm, I think, was sold to the two kids, right, to the two kids, two members of the family, but there didn't seem to be anything else that was going on after July 2nd, right? No, that's right. Other than there was some trade, there were — well, there were these artificial losses that were generated through a couple of stock transactions, but the record doesn't show actually who engaged in those transactions. So you know what I mean when I say material? Yeah, yeah, so — You understand the concept of materiality, right? I believe so. Did anything that happened after July 2nd through the next June 30th that would have been material to the deficiency that the IRS calculated? No, I don't believe so. The burden to show that would have been on Diebold, and they've made no attempt to show that, and certainly it would not be material to their liability as transferees, because as transferees, they're liable for any amount of deficiency up to the amount of the assets they received, and they received a third of the overall assets. Well, let me ask you, as I understand it, the company retained assets having a value of somewhere in excess of $5 million, which is a fraction of what it had beforehand. Nevertheless, it did earn interest on that money, and it still had other transactions through about August 1999. Is it your view that these were not transactions that would have required the filing of a tax return for Diebold? It absolutely would have required the filing of a tax return. And to that extent, how would we be able to conclude that the corporation was still — wouldn't we have to conclude that the corporation was still in existence to that extent, which may be a different matter from whether there was a material change in the deficiency, but I'm not sure I understand how you can argue that the corporation was not still in existence after July 2nd. Well, it comes back to that question of substance over form. In form, those things clearly happened after July 2nd. Well, it's more than that. It exists in substance, too, if it's got tax-generating events, doesn't it? I mean, you're not prepared to say that they didn't have tax obligations, and that sounds more like substance to me than form. Yeah, but the tax obligations resulting from those should have been reported on that July 1st or July 2nd return because — For events occurring — for interest earned after July 2nd? Well, and this is the — sort of that incongruity that you get into when taxpayers force the IRS into the situation of having to recharacterize a transaction's form. You end up — there ends up being a — there's a degree of artifice that has to take place because the taxpayer has forced that on the government. And so the — in substance, the company liquidated on July 2nd, and so those things are treated for tax purposes, certainly not necessarily for corporate law purposes, but for tax purposes, those things are treated as happening on July 2nd. And so — and those are accounted for in the deficiency that was determined for that period. After the recharacterization of the transaction as an assets transfer rather than a share transfer, is it your position that they still would properly have filed a short tax year return? Correct, because as recharacterized, they in substance no longer existed because they had liquidated on July 2nd and therefore had no more shareholders. And it's referred to in a number of revenue rulings that we cited in our brief. It's sort of a de facto dissolution. The statement in Unger v. Commissioner, Judge Hand's statement, that a corporation in the process of liquidation is still in existence if it retains assets to pay its debts, and where that is true, its return must include the period of the retention. How do we deal with that? Well, I think that's correct. It's a correct statement. It's consistent with the regulation. But Judge Hand was not dealing with a situation where you have — where the form and the substance didn't match up. He didn't have that situation before him. And so, as I said, when you have — as here, you have that situation where they don't match up. And so there's always going to be these little things that they're sort of a — I guess you might say a legal fiction and treat it as having happened. If they had filed a return for the 12-month tax year rather than the one-day tax year, their obligations would have been the same once the transaction was recharacterized, wouldn't it? So the form — I think that's right. The form does not achieve anything contrary to the tax law. The argument they're making is that the only reason to invoke form over substance is to allow you to claim that the tax year ended on July 2nd. And I'm not sure that's something that form over substance is concerned with or substance over form is concerned with. Well, thank you for bringing that up. Because, yes, they've made this argument that the IRS — it's supposition that the IRS did this to sort of get around the statute of limitations. That is an argument they never, ever raised in the tax court. It hasn't been litigated. And we certainly do not concede that. We don't concede that the government was necessarily precluded from issuing a — Substance over form exists in order to prevent taxpayers from calling something that it's not or doing something that it's not. I cited Unger v. Commissioner to you because it seems to me that in substance as well as form, this corporation would be viewed as continuing to exist at least through the 12-month tax year. And I'm not sure why — what good reason there is apart from the timeliness question for you as the commissioner. What reason there is to apply substance over form here? Well, I think that the tax court — in fact, this court in the previous opinion already applied substance over form. Their argument on — That was to a different part of the transaction. That was so that a stock sale — an asset sale was not called a stock sale when that's not what it was. Well, correct. But what they're relying on to say that the corporation continued to exist were asset sales. For example, the sale of the farm. That's part of the assets that were sold and that in substance have been determined to have been sold on July 2nd. Because if the transaction was treated as a stock sale, the corporation would not have owned or the — well, the new owners of the corporation would own that asset, and that's who wound up owning that asset at the end of the — when the sale closed. Is that sort of the idea? The idea with the recharacterization, is that — Yeah. I mean, is that what you just — did I accurately translate what you just said or not? Oh, I see. I'm not sure. I'm trying to understand what you just said. I think you're saying that the reason why these after-occurring events should not be given effect to change the tax year is that when you recharacterize the transaction as a stock sale, that occurred on July — or by July 2nd? When you recharacterize the transaction as an asset sale, yes, that occurred on July 2nd. The transaction occurred on July 2nd, even as a stock sale. And the transaction is the asset sale, including the asset sale which, because they chose a different form, did not take place until later? Is that what you're saying? That's correct. And that was part of the reason they chose that form, is they choose that form to make it look less like a liquidation and more like a bona fide stock sale. And so they choose a form in which the corporation doesn't get rid of all of its assets on the day. You see this in every Midco case. They hold on to a few assets and keep them for a little bit, and they do these little things to sort of make it look like there was a bona fide stock sale. But that isn't what happened in substance. And so it's recharacterized. The stock sale transaction that in form occurred on July 2nd is recharacterized as an asset sale. It's on July 2nd, and therefore these after-occurring events are, in essence, artificial if we recharacterize the July 2nd transaction as the transfer of the assets. Correct, or at least the date on which they occurred is artificial, yes. Thank you, Mr. Crick. To the extent there were tax obligations for transactions arising after July 2nd, 1999, on what tax return would they be recorded? They would be recorded on the July 2nd tax return. So they hadn't happened until August of 1999? Well, correct. On June 30th, 2000, the last day of the ordinary taxable year, Double D still held about $250,000 in cash and $5.7 million in other assets. So I'm just asking where the transactions, where any tax-generating transactions between July 2nd, 1999, and June 30th, 2000, what return they would have been recorded on? Well, in practice, the way that they did their reporting was, again, it was part of this fraudulent scheme, as the Court has previously found. And so they did the reporting the way that they did as part of disguising what the transaction was. But, yes, because in substance, the transaction occurred on July 2nd. If they had held this, an asset sale, from the get-go, and conducted it on the timetable that they did, they would have had tax obligations on all of this through June 30th, 2000, right? You know, substance over form allows recharacterization to the extent necessary to avoid the mislabeling of the transaction. And so I'm not sure that you need to do anything more than say, it's an asset sale, it's not a stock sale, pay your taxes on that. Now, it's a separate question what tax year you ought to call it, but I thought you agreed with me that if they had used the June 30th, 2000 closing date, the IRS would have gotten every penny in taxes it was entitled to once the transaction was recharacterized. I believe that's correct. You don't need to recharacterize anything else. I believe that's right. So that seems to me then to be the question of whether or not substance over form requires us to use the July 2nd date. I'm not seeing what reason substance over form requires that. Well, I think it's because it necessarily follows from the substance. If the transaction is recharacterized as a July 2nd asset sale, then the assets that inform, they sold later, were in substance sold on July 2nd. Did you say that part of the Midco scheme, though, is to retain some of the assets so it looks better? Is that what you said earlier? That's a consistent thing that you see. That these are structured so it looks like something's still going on after July 5th. Is that what you said, that that creates the appearance of continued operations? Well, I think I'd probably be speculating as to the reason that they do it. I thought you said that typically in Midco transactions that's what they do. So it's part of the, whether it's fraud or just tax planning, that's what they do to make it look better. Yeah, to make it look more like it was a bona fide stock sale of an ongoing concern. Okay, thank you. Thank you. Mr. Weber, you have a few minutes left. Mr. Weber, I'd like you to address Mr. Carpenter's waiver question, because let me read you the conclusion of your opening brief. The bottom line is, accordingly, the Diebold Foundation respectfully requests the court reverse the tax court's order, vacate the tax court's decision, and remand the case for the tax court to grant the foundation's motion to dismiss for lack of jurisdiction. Where in the brief does it say, and in the alternative, if there was jurisdiction in the tax court, you should reverse on the merits because the tax court incorrectly sustained the commissioner's deficiency notice? So, Your Honor, of course, that's what we said in our brief, and we did because of the posture of the case. So notwithstanding that we had raised, as counsel acknowledged, raised this sort of merits-based question to use it in that way, during the pendency of the case, Judge Geucki, in his opinions, never addressed that point. And, in fact, in his order dealing with the jurisdictional question. Maybe you did raise it below. I'm asking what you raised in the merits brief to this court. What you said was there is no jurisdiction. You didn't address what should happen if there was jurisdiction. Your Honor, that's because the posture of that issue, as framed in the tax court and with no objection by the commissioner, was all focused on jurisdiction. Oh, sure. Okay, fine. But still, what you're asking us to do is say there was no jurisdiction. If the answer is there was jurisdiction, why isn't that the end of it? And if you think it isn't the end of it, don't you have an obligation to alert us in your appeal brief that you have an alternative argument in case you're wrong about the jurisdictional claim? We had no reason, Your Honor, to believe that we were wrong because the cases consistently talk about this as a proposition of jurisdiction. That's fine. That's fine. You made your choice to argue jurisdiction. The only question we're asking you is if we don't agree with you, given that you only argued jurisdiction, isn't that the end of this appeal? Not from our perspective, Your Honor. How can it not be when you did not alert us in your brief to the fact that you were making a merits challenge? Your Honor, until the commissioner filed his reply brief, there was no assertion in the tax court or in this case that it wasn't a jurisdictional question. Wait, wait, wait. I'm sorry. They said all along in the tax court they didn't concede there's no jurisdiction. They argued there is jurisdiction, right? Correct. That's the argument they made. Right. So you say I had no possible expectation that anyone would believe that there is jurisdiction in the tax court. They argued there's jurisdiction in the tax court. The tax court said we do have jurisdiction. You then come to this court and say they're wrong. There's no jurisdiction. That's fine. If we address that argument and decide there is jurisdiction, what would we have left? So, Your Honor, in our brief it's replete with statements and direct on point saying that the commissioner and the tax court are not competent to determine a deficiency for a period that is not the full period of the taxpayer and that is not set out in the notice. Whichever way, whether it's jurisdictional or not jurisdictional. Excuse me. That's not what they're saying. They're not saying that they had jurisdiction to go and assess a different tax year. We're now talking about the question of whether on the merits it was inaccurate for them to conclude that the tax year properly ended on July 2nd and assess a deficiency for that. That's what they're saying. And you're saying they're wrong. Well, that's fine. That's a question of whether the corporation wound up its affairs or didn't wind up its affairs. That's a whole other question than the question of is this tax notice, this notice in the tax court, sufficient to confer jurisdiction on the tax court to do what it ultimately did, which is to say the commissioner is correct about calculating the tax year consequences for July 2nd. Again, Your Honor, you're quite right that the foundational question, it's actually where I think the analysis has to start, is a question of what is the proper taxable year. I'm sorry. I don't see why that's so. The question is there's a tax deficiency notice. It says, relying on the tax year that the taxpayer chose, it says there's a deficiency for that tax year. You're saying that notice was insufficient to confer jurisdiction on the tax court over your petition. Well, it may be or it may not be, but what you're saying is that's so because they're really calculating a different tax year. They're not saying that. They're saying we calculated for that tax year, the one that was noticed in the deficiency. Therefore, there is jurisdiction, and anything else is a merits question about whether that's the correct tax year. In other words, if the commissioner issues a tax deficiency for 1998, calendar year 1998 for a taxpayer, and then at the end of the day the tax court says, yeah, there is a deficiency for that year, if you want to say, no, there wasn't because the tax court was incorrect on the merits to say this transaction occurred in 1998, really it occurred in 1999, whatever, that's all a merits question. That's not a question of the jurisdiction of the court to assess or to address the commissioner's deficiency claim about 1998. Your Honor, the substance of our brief analyzes the question in its raw form from the ground up, and the label you put on it, whether you put on it a merits issue or jurisdictional issue, doesn't change the issue that this court needs to resolve. The consequence, if you decide that the cases that have treated this question of whether or not the notice of deficiency identified the right tax year, those cases that treated it as a jurisdictional question are wrong, and that's your belief, then we ask that you make a determination that nonetheless the liability determination of the tax court must be set aside because it hasn't the competence to issue a decision for a wrong taxable year. I'm using the word competence and wrong taxable year. Competence is another word for jurisdiction. What you're saying is what you're really saying in your alternative argument is they made an incorrect decision about the correctness of the commissioner's assessment. And our opening brief addresses that. The whole brief is devoted to that. All we're talking about here over the last five minutes is the consequence of that. Do you write it down? Is the order from this court that the tax court didn't have jurisdiction in the first place, or is the order from the court that, okay, it did have jurisdiction, but it could not have determined a liability for the period, a period into July 2, 1999, because. It incorrectly determined a liability for that tax year. Again, the consequence is the same. The Diebold Foundation cannot be held liable for a period that is different from the full taxable period of the corporation, the transferor in the transferor-transferee liability chain. Okay. Thank you, Mr. Weber. We'll reserve decision on this case and turn to our next case.